## 3764.  ABRAM *v.* MAPLES, warden.

1. Where the court sentences a misdemeanor convict in the alternative, directing that he labor upon the public works as the proper authorities of the county may direct, for the space of 12 months, with the privilege of paying a designated fine and costs at any time after entering upon said public works, and thereupon be discharged from custody, and it appears that shortly after the imposition of the sentence, and while the defendant was in the custody of the public authorities of the county, he made a tender of the fine and costs to the sheriff of the county, it was the duty of the sheriff to accept the fine and costs as thus tendered, and to notify the proper authorities, who held the custody of the defendant under the sentence, that it had been fully complied with by the payment of the fine and costs to him; and, upon receiving this notice from the sheriff, it was the duty of the officer holding the custody of the defendant under this sentence to discharge him from further custody.

2. Where a sentence with the alternative of a fine has been imposed in a misdemeanor case, the defendant has the right, as a matter of law, to pay, within a reasonable time, the money required by that part of the sentence; and, upon payment or tender thereof to the sheriff of the county within a reasonable time, he is entitled to be discharged from any further custody under the sentence.

DECIDED NOVEMBER 20, 1911.

Habeas corpus; from city court of Camilla—Judge Dasher. September 15, 1911.

An application for a writ of habeas corpus was brought against the warden of convicts for the county of Mitchell, for the purpose of testing the legality of the warden's custody of Charlie Abram, the husband of the petitioner. The facts are as follows: Charlie Abram entered a plea of guilty of the offense of gaming, in the city court of Camilla, on July 19, 1911, and thereupon the judge of the court imposed upon him the following sentence:

"Whereupon it is considered by the court that the defendant, Charlie Abram, be put to work and labor on the public roads, or such other public works as the proper authorities of said county may direct, for the space of 12 months, with the privilege to pay a fine of $60, including all costs of this prosecution, and be discharged at any time after entering upon such public work." The day after this sentence was imposed Charlie Abram was delivered by the sheriff of the county into the custody of the respondent as warden of convicts for Mitchell county, and he was put to work upon the public roads of the county. Seven days after the imposition of the sentence B. H. Jones, a citizen of said county, representing the petitioner and Charlie Abram, went to C. D. Crowe, the sheriff of Mitchell county, and made a tender to him of the full amount of the fine imposed, and requested the sheriff to accept it, and demanded the discharge of Charlie Abram from custody. The sheriff refused to accept the money, assigning as a reason for the refusal that the authorities of the county would not discharge him from custody. On August 19th thereafter Jones made a like tender of the fine to the sheriff, which was again refused by him, and for the same reason, and on the following day Jones again made a tender to the sheriff of the fine imposed upon Charlie Abram, and requested him to accept the money, "and have the said Charlie Abram discharged, which said tender the said sheriff refused to accept, and refused to order the said Charlie Abram discharged."

The respondent set up the following reasons why Charlie Abram should not be discharged from his custody: (1) That he holds custody of Charlie Abram as the warden of convicts of Mitchell county, under regular appointment of the prison commission of Georgia, under the sentence imposed by the court, and that the said Abram is under the absolute and exclusive control of the prison commission of Georgia; that the term of the sentence has not expired, and that as warden he has no authority to release the convict, unless authorized to do so by the prison commission of the State of Georgia. (2) That that part of the sentence which reads, "and be discharged at any time after entering upon such public work," is an old printed form and is mere surplusage; that it was not the intention of the judge, in imposing the fine and sentence, to incorporate in his sentence the language quoted, but

that it was only his intention to give a reasonable time in which to pay the fine after the imposition of the sentence, and that more than a reasonable time had elapsed for this purpose before the fine was tendered to the sheriff. (3) That the sheriff was not the proper officer to whom to make the tender of payment of the fine, or to receive the fine. (4) That no notice or demand of any kind was ever served upon the respondent warden for the release of Charlie Abram; his first notice thereof being the application for discharge under habeas corpus. (5) That no application was made to the prison commission for the release of Charlie Abram, and no notice was ever served on that body or tender made to it, and said commission had the exclusive control of the convicts.

The judge who imposed the sentence testified, that after the imposition of the sentence he had some conversation with the defendant as to the time that would be allowed in which to pay the fine, and that he stated to the defendant that he would have until Mr. Maples, the warden, came after him, which would probably be the next day, and that it was his intention to give the defendant until the next day, or until Mr. Maples came after him, to pay the fine; that the form of the sentence which he used was the general form that had been in use for a number of years, and that he did not consider the language thereof in making out the sentence, simply signing the printed form. This testimony was objected to by the attorney for the petitioner, on the ground that it was irrelevant and immaterial, and was an effort on the part of the judge to change, modify, amend, revoke, and nullify a written sentence and judgment, after the term of the court at which it had been rendered; and the admission of the testimony is assigned as error. The sheriff in his testimony admitted that the tender of the fine had been made to him, and that he refused it, and that, while he did not know whether he was the proper officer to receive fines imposed on prisoners in the city court of Camilla, he did collect most of them.

After hearing the evidence, the court refused to discharge Charlie Abram from custody, and this refusal is assigned as error.

*E. E. Cox,* for plaintiff. *E. M. Davis,* for defendant.

HILL, C. J. (After stating the foregoing facts.)

1. We think the court erred in not discharging the convict. We are not disposed to be severely technical, or to require strict

compliance with mere formal procedure, when the personal liberty of a citizen is concerned. The question, and the only one, to be determined, is: Is the custody of Charlie Abram, under the admitted facts of this case, legal? It is immaterial that the warden held his position under the prison commission of Georgia, and that neither he nor the prison commission had been given any notice that the fine imposed by the judge had been tendered to the sheriff. The validity of this custody is to be tested by the terms of the sentence imposed upon Charlie Abram, and whether he had complied with its terms; and to test this question it was not necessary for the prison commission or the warden to receive any notice of an effort made by the convict to comply with the terms of the sentence; nor does it matter whether or not the sheriff was, strictly speaking, the officer to whom the tender should have been made and who should have received the fine. We think, however, he was such officer. It is a general practice of sheriffs of this State to collect fines imposed in criminal cases. They are bonded officers of the State, and while it may not be expressly within their duties, in practice it is generally performed by them, and in this case the sheriff states that he had collected the fines imposed in the city court.

2. It is admitted that the tender of this fine was made by the agent of the petitioner and Charlie Abram, the convict, seven days after the fine had been imposed, and this tender was twice repeated a few days thereafter, and the fine was every time refused by the sheriff. The Penal Code (1910), § 1111, provides that "every fine imposed by the court under the authority of this code shall be paid immediately, or within such reasonable time as the court may grant." In the present case the court imposed a fine in the alternative, and gave to the defendant the privilege of paying this fine, including all costs, at any time after entering upon his labor on the public works of the county. Where the courts have a right to impose a fine as a part of the sentence, we think they have also a right to grant to the defendant the privilege of paying it at any time during his period of confinement under the sentence, and the payment thereof should operate as a discharge from further custody. This is a privilege in favor of liberty, and should be left to the discretion of the trial court. Now, in this case the judge who imposed the sentence testified to the effect that it was not

his intention to give such an extended privilege to the defendant in reference to the payment of the fine; that he meant to give only a reasonable time in which to pay it.

We do not think that the testimony of the judge on this point was relevant or material. It certainly could not operate to change the sentence, which was unambiguous. It was the duty of the judge, in the exercise of his discretion, to prescribe at least a reasonable time within which to pay the fine; and even if we disregard the time which he did actually prescribe for that purpose, the law itself would give to the defendant a reasonable time in which to pay the fine, and would declare what would be a reasonable time in each particular case, under the evidence. *Dunaway* v. *Hodge,* 127 *Ga.* 690 (55 S. E. 483). In that case the Supreme Court held that 15 days after a fine had been imposed was a reasonable time in which to make a legal tender in payment of the fine and costs, and that it should have been accepted and the prisoner discharged. In the case of *Broomhead* v. *Chisolm,* 47 *Ga.* 393, the court decided that the better practice, in imposing a sentence with the alternative of a fine, would be for the judge to fix some reasonable time in which the prisoner might pay the fine, and that, if this was not done, the prisoner would nevertheless be entitled, under the law, to a reasonable time in which to pay it. In the case above mentioned the sentence was imposed on March 12th, and on April 2d thereafter the tender of payment of the fine was made, and the court held that that was a reasonable time. Here the undisputed evidence is that the tender of the fine was made to the sheriff the first time within seven days after the imposition of the sentence. Certainly this was a reasonable time.

The material facts in this case, in our opinion, are fully controlled by the decisions of the Supreme Court in the cases of *Dunaway* v. *Hodge* and *Broomhead* v. *Chisolm,* supra; and, under the law as there decided, this court reverses the judgment of the lower court, with direction that Charlie Abram be permitted, by himself or any one acting for him, to pay the fine to the sheriff of the county of Mitchell, or other officer authorized to receive it, and that upon such payment, and notice thereof given to respondent, the warden who has him in custody shall discharge him from custody; otherwise, that he continue to hold in his custody the said Abram.        *Judgment reversed, with direction.*