STATE OF HAWAII, Plaintiff-Appellee, *v.* DENNIS MINORU NAKAMURA, Defendant-Appellant

NO. 6258

JULY 28, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY MENOR, J.

This is an appeal from a revocation of probation. The defendant, after pleading guilty to burglary in the second degree, was placed on probation by the circuit court for a period of five years. A special condition of probation was that he should remain in Habilitat until he was clinically discharged. The defendant was a resident of Habilitat at the time of sentencing; however, seventeen days after he was placed on probation, he left the center without clinical authorization. He explained to his probation officer that his mother was having financial problems and he wanted to get a job to help her. The State thereafter moved for revocation of his probation. The motion was denied, but the circuit court amended the terms of probation by adding the condition that the defendant serve six months in the Halawa Correctional Facility. A further condition was:

That upon Defendant's release from the Halawa Correctional Facility, Defendant is to enter and remain in Habilitat until clinically discharged.

The defendant served six months at Halawa as directed and was released from custody on March 25, 1976, when his mother and brother came to take him home. Prior to his discharge he had apprised his Halawa counselor and the Habilitat representative, a Mr. Henry Perritt, of his desire to spend up to ten hours with his mother before reporting to Habilitat. The problem was that Habilitat would have none of this. The very same day the defendant was discharged from Halawa, Mr. Perritt wrote to the judge:

This letter is in regard to our decision to reject Dennis Nakamura as a resident in the Habilitat Program.

At the time of Dennis' impending release from Halawa Correctional Facility he was told that when released he should come directly to the Habilitat Induction Center. Dennis stated that he wished to visit with his mother prior to entering the Habilitat but we explained that if he did so we would not be able to accept him into the program. On a later visit we advised Dennis that we would pick him up from Halawa when he again stated that he wanted to go home first, again we explained our position and told him that he would not be accepted into the program on those terms. *Unfortunately Dennis decided that he would rather spend some time with his mother than make a serious effort to change his life*. (Emphasis added)

Habilitat's rejection of the defendant as a resident was based on unreasonable and arbitrary grounds. The short visit the defendant desired with his family was not unreasonable. There was nothing to indicate that either his relationship with his mother or the home environment was such that the visit with her would have been detrimental to his rehabilitation. After being confined for six months, it was only natural that he and his mother would want to spend some time together, however brief that period might be, before he was again compelled to take up residence elsewhere. The bonds of familial love and society are extremely important in promoting development and maturity in an individual. Such relation-

ships are to be encouraged as a meaningful tool in the rehabilitative process. It is incomprehensible to us, therefore, that Habilitat should have taken the rigid stance that it did. There is nothing in the record to show that it could not have accommodated the defendant's wishes without material effect to its program. Conditions imposed by a court upon granting probation must be reasonable. HRS § 706-624. It ought not to be expecting too much of a private agency to be guided by similar considerations, at least where it chooses to participate in court-approved programs.

HRS § 706-624(4) mandates that the defendant "be given a written copy of any requirements imposed [as a condition of probation], stated with sufficient specificity to enable him to guide himself accordingly." And where the time for performance of a condition of probation is not otherwise expressly specified by order of the court or by statute or rule, such a condition shall be performed within a reasonable time. *Cf. State v. Huggett,* 55 Haw. 632, 525 P.2d 1119 (1974). The defendant reasonably believed that under the court's decree, he could spend a few hours with his mother before reporting to Habilitat. And while a valid argument could be made that the language of the trial court's special condition required that the defendant proceed immediately and directly to Habilitat upon his discharge from Halawa, such an interpretation is not absolutely compelled. Certainly, it cannot seriously be argued that had Habilitat chosen to accept the defendant for enrollment the day after or several days after his discharge from Halawa, the defendant would nonetheless have been in violation of the terms of his probation. Moreover, there is nothing in the record to show that the court, at the time it imposed its special condition, was even aware of the existence of the so-called Habilitat "house rule" which was applied to the defendant.

The court may revoke a defendant's probation only where it is satisfied "that the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of [probation]." HRS § 706-628(1). The defendant's enrollment at Habilitat, following this brief visit, was made impossible by Habilitat's arbitrary rejection. *Cf. State v.*

*Moretti,* 50 N.J.Super. 223, 141 A.2d 810 (1958). Under these circumstances, there is a serious question as to whether the defendant *inexcusably* failed to comply with the special condition of probation. At no time did the defendant express any unwillingness to comply with the special condition imposed by the court. There was no wilful and deliberate attempt on his part to circumvent the order of the court.

Moreover, except for his inability to gain admittance to Habilitat, his conduct after discharge from Halawa was entirely consistent with the rehabilitative objectives of probation. He was discharged from Halawa on March 25, 1976, which was a Thursday. The following day he contacted Drug Addiction Services of Hawaii (D.A.S.H.) to request counseling and urinalysis screens. He also began reporting to his probation officer every Thursday as directed. On April 1, 1976, he began receiving regularly scheduled counseling and treatment at the D.A.S.H. center. Subsequent random urine surveillance tests conducted by D.A.S.H. for possible illicit narcotic use consistently showed negative results. On April 21, 1976, he became regularly employed. The court's own probation officer knew and apparently approved of the defendant's activities. These activities were not "post-sentencing conduct wilfully and deliberately subversive of exemplary probationary behavior." *State v. Huggett, supra* at 639.

Relative to his progress at D.A.S.H., Ms. May Goya, counseling supervisor, wrote to the court that in her professional judgment, the defendant had reevaluated his direction in life and appeared to be in the process of acquiring a new set of values. His counselor at Halawa, Ms. Jan Langtry, recommended that the defendant "be allowed probation to continue treatment with D.A.S.H., and remain employed within the community." And his probation officer, Robert K. Y. Chang, recommended that the special condition of his probation requiring him to participate in the Habilitat program be revoked, because it was believed by the probation department that the defendant could function satisfactorily in the community with outpatient service from Drug Addiction Service of Hawaii and probation supervision. Mr. Chang in his report

explained the reasons for his recommendation:

Since being released from Halawa Correctional Facility on March 25, 1976, the Defendant has been receiving treatment every Thursdays at the Drug Addiction Service of Hawaii (DASH) beginning April 1, 1976, working at Royal Automotive Service Company as a body and fender helper, and reporting for his probation every Thursday.

Inasmuch as he has been following all the instructions from his probation officer of seeking treatment, working, and reporting for his probation, plus the fact that he served six months in jail for leaving Habilitat, a recommendation will be made that the Defendant's probation not be revoked.

And while we assume, as we must, that the trial court had good reason for wanting the defendant to enter and remain in Habilitat until clinically discharged, it was an abuse of discretion for it not to consider reasonable alternative conditions of probation. Such an alternative could have been the program sponsored by the Drug Addiction Services of Hawaii.[1] In this connection, Ms. Goya wrote to the court:

I feel that he could benefit greatly be (sic) being allowed the opportunity to continue participating in the D.A.S.H. program. Our treatment plan for him is to continue supportive one-to-one counseling, and also participate in group therapy. Mr. Nakamura has been very cooperative and receptive to suggestions regarding treatment. My recommendation is that he be allowed the opportunity to continue treatment at D.A.S.H. We will, of course, continue urine surveillance and cooperate with the probation office.

We think that the action of the trial court in revoking probation and requiring the defendant to serve five years at the Hawaii State Prison, simply because he could not be admitted to Habilitat, was unduly harsh under the circumstances. Revocation was grossly disproportionate to the al-

---

[1] We also assume that Habilitat was not in receipt of public funds and that it could not have been required by the court to accept the defendant for residency.

leged misconduct of the defendant. He had already served six months in Halawa Jail. There was reasonable alternatives to Habilitat available. His overall probationary conduct following his discharge was other than "wilfully and deliberately subversive of exemplary probationary behavior." The thrust of the following statement from *State v. Huggett, supra,* is particularly appropriate in this case:

> "Even absent a completely satisfactory showing of justification for the defendant's overall conduct, a term of imprisonment as a special condition of probation, if at all warranted, should be commensurate with the ends of justice sought to be attained, considering the best interests of both the public and the defendant." 55 Haw. at 639, 525 P.2d at 1124.

Reversed and remanded for further proceedings consistent herewith. Upon remand the trial court, if it deems it advisable, may consider continued treatment at the Drug Addiction Services of Hawaii as a special condition of probation.

*Marie N. Milks,* Deputy Public Defender for defendant-appellant.

*Lee T. Nakamura,* Deputy Prosecuting Attorney for plaintiff-appellee.